## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **LUIS GUILLERMO CASTILLO-RUBIO,** | § | |
| **Reg. No. 03522-480,** | § | |
| **Movant,** | § | |
| | § | **EP-23-CV-300-DB** |
| **v.** | § | **EP-11-CR-303-DB-2** |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| **Respondent.** | § | |

### MEMORANDUM OPINION AND ORDER

Luis Guillermo Castillo-Rubio moves to vacate, set aside, or correct his sentence through a *pro se* motion pursuant to 28 U.S.C. § 2255. Mot. to Vacate, ECF No. 397.[1] His opposed motion is denied for the following reasons.

### BACKGROUND AND PROCEDURAL HISTORY

Castillo-Rubio, also known as El Pariente, is a former high-ranking member of the notorious Juarez Cartel, also known as La Linea or the Vicente Carrillo-Fuentes Drug Trafficking Organization.[2] Presentence Investigation, ECF No. 310 at ¶ 21. He is serving six concurrent life sentences imposed after a jury found him guilty on three counts of conspiracy to import in violation of 21 U.S.C. §§ 963, 952 and 960, and three counts of conspiracy to possess with the intent to distribute in violation of 21 U.S.C. 21 U.S.C. §§ 846 and 841, of more than 1,000 kilograms of marijuana, more than five kilograms of cocaine, and more than one kilogram of heroin. J. Crim. Case, ECF No. 322 at 1, 2. He is incarcerated at the United States Penitentiary in Victorville,

---

[1] "ECF No." refers to the Electronic Case Filing number for documents docketed in EP-11-CR-303-DB-2. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

[2] *See* Presentence Investigation, ECF No. 310 at ¶ 8 ("The Juarez Cartel ... developed a system to corrupt law enforcement, military, and political contacts throughout Mexico to establish and maintain the cartel's drug trafficking activities. The Juarez Cartel employed groups of assassins or "sicarios" ... who carried out acts of violence to include murders, kidnappings and torture to establish and maintain the cartel's drug trafficking activities.").

California. *See* Bureau of Prisons, Find an Inmate, https://www. bop.gov/inmateloc/ (search for Reg. No. 03522-480, last visited Apr. 26, 2024).

For eleven years, Castillo-Rubio was the point of contact between the Juarez Cartel and corrupt Mexican law enforcement officials. *United States v. Castillo-Rubio*, 34 F.4th 404, 407 (5th Cir. 2022). He also directed the cartel's enforcement arm, authorizing murders, kidnappings, car bombings, and other violent acts in furtherance of the drug conspiracy. *Id.* He eventually became Carrillo-Fuentes' right-hand man. *Id.* "At trial, Castillo-Rubio's defense was that he was not El Pariente. He argued that the seven witnesses identifying him as El Pariente were lying in exchange for money, reduced sentences, and immigration benefits for their families." *Id.*

In his direct appeal, Castillo-Rubio raised six grounds for relief. First, he contested the Court's decision to empanel an anonymous jury and impose safety measures. *Id.* at 408. Second, he asserted the Court erred in allowing testimony which linked him to crimes outside of the indictment. *Id.* at 409. Third, he maintained the prosecutor engaged in misconduct by asking questions which were either leading or intended to elicit hearsay responses. *Id.* at 410. Fourth, he claimed his counsel provided ineffective assistance. *Id.* Fifth, he argued his sentence was procedurally unreasonable because the Court failed to adequately explain his sentences and failed to consider the 18 U.S.C. § 3553(a) factors by not addressing his arguments for a variance. *Id.* at 411. Finally, he challenged the substantive reasonableness of his sentences as "arbitrary" because they were not based on his individual circumstances and because the Court failed to provide a reasoned basis for the sentences it imposed. *Id.* His claims were rejected by the Fifth Circuit Court of Appeals and the Court's judgment was affirmed. *Id.*

In his § 2255 motion, Castillo-Rubio raises eleven grounds for relief. Mot. to Vacate, ECF No. 397 at 4–7. He claims his counsel provided constitutionally ineffective assistance when he failed to: (1) explain the elements the United States was required to prove in order to obtain guilty verdicts at trial; (2) explain that the United States had the ability to illicit testimony about crimes not charged in the indictment; (3) explain he could plead guilty without the advantage of a plea agreement; (4) conduct a meaningful pretrial investigation; (5) consult with him about possible defenses; (6) review information and documentation provided by him; (7) present a defense; (8) challenge the use of an anonymous jury on the grounds that such a jury was overly prejudicial to him; (9) prepare him for the presentence interview; (10) file any objections to the presentence report; (11) offer mitigation evidence at his sentencing. *Id.* He asks the Court to set aside his conviction and sentence. *Id.* at 12. He also asks for an evidentiary hearing. Mem. in Supp., ECF No. 401 at 20.

## STANDARD OF REVIEW

Title 28 U.S.C. § 2255 "'provides the primary means of collateral attack on a federal sentence.'" *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (quoting *Cox v. Warden*, 911 F.2d 1111, 1113 (5th Cir. 1990)). But "it does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). It is not a "substitute for direct appeals." *United States v. Willis*, 273 F.3d 592, 596 (5th Cir. 2001); *see also United States v. Frady*, 456 U.S. 152, 167 (1982) (imposing a "cause and actual prejudice" standard on motions for collateral relief when no objection was made on direct appeal); *Reed v. Farley*, 512 U.S. 339, 354 (1994) (stating "[w]here the petitioner—whether a state or federal prisoner—failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes 'cause' for

the waiver and shows 'actual prejudice.'"). And it identifies only four grounds on which a prisoner may obtain relief: (1) the "sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack." *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted). Consequently, § 2255 does not permit relief on a claim of error that is neither constitutional nor jurisdictional unless the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *Hill v. United States*, 368 U.S. 424, 428 (1962). It also requires the prisoner to bear the burden of establishing a claim of error by a preponderance of the evidence. *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980) (citing *United States v. Kastenbaum*, 613 F.2d 86, 89 (5th Cir. 1980)). It permits a court to "vacate and set the judgment aside" if a prisoner's claims are meritorious and to "discharge the prisoner or resentence him or grant [him] a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). But it also allows a court to dismiss the motion "[i]f it plainly appears from the motion ... and the record of prior proceedings that the moving party is not entitled to relief." 28 U.S.C. foll. § 2255 Rule 4(b); *see also* 28 U.S.C. § 2255(b); *United States v. Drummond*, 910 F.2d 284, 285 (5th Cir. 1990) ("Faced squarely with the question, we now confirm that § 2255 requires only conclusive evidence—and not necessarily direct evidence—that a defendant is entitled to no relief under § 2255 before the district court can deny the motion without a hearing.").

A prisoner may bring a Sixth Amendment "ineffective-assistance-of-counsel claim ... in a collateral proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 504 (2003). If he does, his claim is analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466

U.S. 668 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail, he has the burden of showing (1) his counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 689–94. To establish deficient performance, he must prove that his counsel's assistance fell "'below an objective standard of reasonableness.'" *United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003) (quoting *Strickland*, 466 U.S. at 688). In other words, he must show his "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *United States v. Lincks*, 82 F.4th 325, 330–31 (5th Cir. 2023). "[T]o establish prejudice, [he] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (quoting *Strickland*, 466 U.S. at 694).

ANALYSIS

### A. Ineffective Assistance of Counsel During the Plea Negotiation Phase

Castillo-Rubio claims his counsel provided constitutionally ineffective assistance during the plea negotiation phase of his criminal proceedings when he failed to explain: (1) the elements the United States was required to prove in order to obtain guilty verdicts at trial; (2) the United States had the ability to illicit testimony about crimes not charged in the indictment; and (3) he could plead guilty without the advantage of a plea agreement. Mot. to Vacate, ECF No. 397 at 4.

### (1) Failure to Explain Elements of the Offenses

Castillo-Rubio maintains his counsel never explained that—because he was charged with six conspiracy counts—the Government "was not required to prove that [he] physically

5

participated in the distribution of the narcotics charged in the Indictment." Mem. in Supp., ECF No. 401 at 12. As a result, he "made the decision to go to trial on the mistaken belief that because he never directly distributed any narcotics [the Government] would be unable to obtain a guilty verdict." *Id.*

"It is settled law that conspiring to commit a crime is an offense wholly separate from the crime which is the object of the conspiracy." *United States v. Threadgill*, 172 F.3d 357, 367 (5th Cir.1999) (citation omitted). "Thus, … a conspiracy charge need not include the elements of the substantive offense the defendant may have conspired to commit." *Id.* (citations omitted). "In a drug conspiracy case, the Government must prove beyond a reasonable doubt that a conspiracy [to commit an offense] existed, that the accused knew of the conspiracy, and that he knowingly and voluntarily joined it." *United States v. Morgan*, 835 F.2d 79, 82 (5th Cir. 1987) (citing *United States v. Jackson*, 700 F.2d 181, 185 (5th Cir. 1983)). "Under 21 U.S.C. §§ 846 and 963, the crucial element of a conspiracy is an agreement between two or more persons to commit the offense." *United States v. Goff*, 847 F.2d 149, 166 (5th Cir. 1988), *opinion modified on reh'g* (July 18, 1988). "The existence of such an agreement may be proved by either direct or circumstantial evidence. The very nature of conspiracy frequently requires that the existence of an agreement be proved by inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme." *United States v. Ayala*, 643 F.2d 244, 248 (5th Cir. 1981).

In *Missouri v. Frye*, 566 U.S. 134, 138–145 (2012), and *Lafler v. Cooper*, 566 U.S. 156, 162–163 (2012), the Supreme Court held that the Sixth Amendment right to effective assistance of counsel extends to the negotiation and consideration of plea offers that lapse or are rejected. In *Frye*, the Court specifically held that counsel has a "duty to communicate formal offers from the

6

prosecution to accept a plea," and, where such an offer is not communicated to the defendant, counsel does "not render the effective assistance the Constitution requires." *Frye*, 566 U.S. at 145. So, the *Frye* Court held that defense counsel has a duty to communicate formal offers from the prosecution prior to the offer's expiration, and that defense counsel's failure to inform a defendant of a written plea offer before it expires satisfies the deficient performance prong of the standard set forth in *Strickland*. *Id.* at 145–147. In *Lafler*, the defendant went to trial rather than accept a plea deal as a result of ineffective assistance of counsel during the plea negotiation process. *Lafler*, 566 U.S. at 166. In this circumstance, the movant must demonstrate that "the outcome of the plea process would have been different with competent advice." *Id.* at 163.

The record shows that on March 5, 2019, Castillo-Rubio participated in a "*Frye / Lafler* Hearing" with his counsel. Hearing Tr., ECF No. 399 at 2. During the hearing, he listened as the Government summarized their plea negotiations and "reverse proffer" discussions. *Id.* at 3–8. He heard the Government advise the Court that Castillo-Rubio admitted in his post-arrest statement that "he was hired by the Vicente Carrillo family as an accountant, and later he met several ... high-ranking members of the Vicente Carrillo-Fuentes cartel." *Id.* at 3. He was informed that "at least nine subjects who were part in some way of the cartel ... would testify about [his] involvement" with the drug trafficking conspiracy. *Id.* at 5. He was shown videos, provided a list of some of the witnesses, and given a brief synopsis of their expected testimony. *Id.* at 6. A proposed plea agreement—which Castillo-Rubio presumably read—was admitted "for purposes of the record only." *Id.* at 7. He was told the deadline for accepting the plea agreement was the close of business on the following Friday. *Id.* at 6.

7

The plea agreement contained a summary which purported to describe Castillo-Rubio's involvement in a drug trafficking conspiracy:

> The Defendant Luis Guillermo Castillo-Rubio now admits that through the combined efforts of [corrupt law enforcement members], and other [Juarez Cartel] operatives he agreed to the importation of over 1000 kilograms of marijuana, over 5 kilograms of cocaine and over 1 kilogram of heroin from the year 2000 through and including April 2012.

Plea Agreement, Ex. 1, ECF No. 402-1 at 10.

Hence, the record supports a conclusion that Castillo-Rubio knew the Government had evidence (1) he recognized an illegal drug trafficking conspiracy existed, and (2) he knowingly and voluntarily participated in it. He was accordingly made aware of the elements of the offense—and the evidence against him—before his trial.

Castillo-Rubio was also told at the hearing that if he rejected the plea offer and was convicted, he would probably face a life sentence:

> based on the witnesses, based on the testimony and the seizures, he is going to be looking at a life sentence. And, the plea agreement is 500 months, which is a very significant term of imprisonment; however, he does have the means, and he absolutely does have the means to assist with other individuals who are arrested in Mexico who will be brought here, some who are already here, and he can provide information that would assist in reducing that.

Hearing Tr., ECF No. 399 at 7. Still, Castillo-Rubio rejected the offer and proceeded to trial.

The record supports a conclusion that Castillo-Rubio was advised that the Government was not required to prove that he physically participated in the distribution of the narcotics charged in the indictment. Hence, he cannot meet his burden of showing his counsel's performance was deficient or there is a reasonable probability that, but for his counsel's purported errors, the result of the proceeding would have been different.

## (2) Failure to Explain Admissibility of Evidence of Extrinsic Acts

8

Castillo-Rubio contends his counsel never explained "that the alleged actions of the Juarez Cartel, his purported involvement therein, and/or the statement he made while in Mexico about the Cartel could be introduced at trial." Mem. in Supp., ECF No. 401 at 12. He argues the Government "used the acts of the Juarez Cartel, as told by their cooperating witnesses and paid informants, to inflame and entice the Jury" into convicting him. *Id.*

Evidence that a defendant associated with co-conspirators and participated in a criminal act "may be *insufficient* to support the inference that the defendant [knowingly and] voluntarily joined a conspiracy." *United States v. Roberts*, 619 F.2d 379, 383 (5th Cir. 1980) (emphasis added) (citing *United States v. Suarez*, 608 F.2d 584 (5th Cir. 1979); *Panci v. United States*, 256 F.2d 308 (5th Cir. 1958)). So, "if the government does not present *intent evidence* in its case in chief[,] the defendant may simply rest and argue lack of intent to the jury without giving the government the opportunity to present such evidence in rebuttal." *Id.* (emphasis added). Therefore, a not guilty plea in a conspiracy case renders the defendant's intent a material issue and imposes a difficult burden on the government. *Id.* Consequently, "[e]vidence of such extrinsic offenses as may be probative of a defendant's state of mind is admissible unless he 'affirmatively take(s) the issue of intent out of the case.'" *Id.* (quoting *United States v. Williams*, 577 F.2d 188, 191 (2d Cir. 1978)). Indeed, "[t]he mere entry of a not guilty plea in a conspiracy case raises the issue of intent sufficiently to justify the admissibility of extrinsic offense evidence." *United States v. Broussard*, 80 F.3d 1025, 1040 (5th Cir. 1996).

Furthermore, Castillo-Rubio asserted in his direct appeal that the Court erred in allowing testimony which linked him to crimes outside the indictment. *Castillo-Rubio*, 34 F.4th at 409. He was told in the Fifth Circuit's opinion that Federal Rule of Evidence 404(b) on the admission of

9

extraneous offense evidence does not apply—and the evidence is generally admissible—"[w]hen the challenged evidence is 'intrinsic' to the offenses charged." *Id.* (citing *United States v. Freeman*, 434 F.3d 369, 374 (5th Cir. 2005)). Indeed, "[a]cts committed in furtherance of the charged conspiracy are themselves part of the act charged, not 'other acts' within the meaning of Rule 404(b)." *Id.* at 410 (citing *United States v. Miller*, 116 F.3d 641, 682 (2d Cir. 1997)).

Consequently, witnesses were permitted to testify, among other things, that Castillo-Rubio was present when people were tortured and had ordered murders in the furtherance of the charged conspiracy. *Id.* Any objection to the testimony by his counsel would have been unavailing. Consequently, Castillo-Rubio cannot meet his burden of showing his counsel's assistance fell below an objective standard of reasonableness.

### (3) Failure to Explain Option of Open Plea to the Indictment

Castillo-Rubio concedes he received a plea offer from the Government, participated in a *Frye / Lafler* hearing, and was questioned by the Court about his decision to reject the plea offer. Mem. in Supp., ECF No. 401 at 12. But he contends "[n]one of these occurrences excuse [his counsel's] failure to explain the availability and benefits of pleading guilty without a written plea agreement." *Id.* He suggests "[p]leading guilty 'straight up' would have allowed [him] to avoid trial, receive a more favorable sentence because of [a three-level] acceptance of responsibility reduction, all while not having to agree to cooperate with the United States." *Id.* at 13.

According to the prosecutor, the purpose of the *Frye / Lafler* hearing with Castillo-Rubio present was to demonstrate to the benefit of entering into a plea agreement over the risk of proceeding to trial—or pleading guilty without the benefit of a plea agreement:

> I wanted to have this hearing so that [Castillo-Rubio] understands that based on the witnesses, based on the testimony and the seizures, he is going to be looking at a

life sentence. And, the plea agreement is 500 months, which is a very significant term of imprisonment; however, he does have the means, and he absolutely does have the means to assist with other individuals who are arrested in Mexico who will be brought here, some who are already here, and he can provide information that would assist in reducing that.

Hearing Tr., ECF No. 399 at 7.

Castillo-Rubio's counsel acknowledged that he received and discussed the plea offer with his client. *Id.* at 8. He explained that Castillo-Rubio's biggest problem with the agreement was the 500-month sentence—which Castillo-Rubio viewed as a life sentence. *Id.*

The probation officer who prepared the presentence report determined, "[b]ased upon a total offense level of 42 and a criminal history category of I, the guideline imprisonment range [for Castillo-Rubio was] 360 months to life. Presentence Investigation, ECF No. 310 at ¶ 117. He did not include a three-level reduction for acceptance of responsibility in his calculation. *Id.* at ¶ 92.

Castillo-Rubio's suggestion that he suffered prejudice because he could have received "a more favorable sentence" with an open plea is likely untrue. A plea without the benefit of a plea agreement would have allowed the Government the opportunity to introduce evidence supporting several upward adjustments. In fact, his total offense level was increased when the Court granted the Government's motion for a four-level upward adjustment, instead of a two-level upward adjustment, based on Castillo-Rubio's role as an organizer/leader of the drug trafficking conspiracy. Statement of Reasons, ECF No. 323 at 1. Denying the facts at an open plea "because he … maintained his innocence" would have prompted the Government to present the same evidence it presented at trial. Mem. in Supp., ECF o 401 at 13. Objecting to the sentencing calculations would have resulted in the Government calling witnesses and presenting evidence which would have disqualified him from the third point for acceptance of responsibility. Based on

11

these considerations, Castillo-Rubio's open guilty plea to the indictment, followed by the Government's presentation of evidence, would have likely resulted in life sentences.

Castillo-Rubio cannot meet his burden of showing a reasonable probability that, but for counsel's purported errors, the result of the proceeding would have been different.

**B.    Ineffective Assistance of Counsel During the Trial Phase**

Castillo-Rubio claims his counsel provided constitutionally ineffective assistance before and during trial when he failed to: (4) conduct a meaningful pretrial investigation; (5) consult with him about possible defenses; (6) review information and documentation provided by him; (7) present a defense; (8) challenge the use of an anonymous jury on the grounds that such a jury was overly prejudicial to him. Mot. to Vacate, ECF No. 397 at 5.

(4) Failure to Conduct a Pre-trial Investigation

Castillo-Rubio claims he "attempted to provide [his counsel] with suggestions and information that he believed would help his defense." Mem. in Supp., ECF No. 401 at 5. His suggestions included an assertion that his admissions concerning his role in bribing Mexican officials on behalf of the Vicente Carrillo-Fuentes Drug Trafficking Organization—given to Federal Bureau of Investigations (FBI) and Drug Enforcement Administration (DEA) special agents while he was in Mexican custody in Mexico City—was inadmissible in a Mexican Court. *Id.* His information included a list of potential witnesses who could have explained how he legally obtained what little money he possessed. *Id.* His information also included "the names of potential witnesses [who] would have established that he was not a member, much less a leader, of the Juarez Cartel." *Id.* at 16. He further contends that if his counsel had conducted a reasonable investigation, he could have effectively objected to the Government's leading questions and would

12

not have stipulated "to the existence of the drugs purportedly seized by the United States—during various law enforcement actions." *Id.* at 15.

"The Supreme Court has interpreted the Sixth Amendment to require defense counsel 'to make reasonable investigations [into potential mitigating evidence] or to make a reasonable decision that makes particular investigations unnecessary.'" *Brewer v. Lumpkin*, 66 F.4th 558, 565 (5th Cir. 2023) (alteration original) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. But "[a] defendant who alleges a failure to investigate on the part of his counsel must allege *with specificity* what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (emphasis added).

It is true that a suspect must receive *Miranda* warnings by federal agents during a custodial interrogation—even in Mexico—for his statements to be admissible in court in the United States as compliant with the Fifth Amendment. *United States v. Coulter*, 41 F.4th 451, 456 (5th Cir. 2022). "A suspect is ... 'in custody' for *Miranda* purposes when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *United States v. Wright*, 777 F.3d 769, 774 (5th Cir. 2015) (quoting *United States v. Bengivenga*, 845 F.2d 593, 596 (5th Cir. 1988)).

Additionally, "[w]hether a confession is admissible ... turns on whether it was made voluntarily." *United States v. Cantu-Ramirez*, 669 F.3d 619, 624 (5th Cir. 2012). To make this

determination, "[a] court considers [the] totality of the circumstances, which include[s] the length of detention, length of questioning and its location, the use of physical punishment, and whether the accused is informed of his constitutional rights." *United States v. Shows Urquidi*, 71 F. 4th 357, 369 (5th Cir.), *cert. denied sub nom. Iglesias-Villegas v. United States*, 144 S. Ct. 268 (2023) (citing *Withrow v. Williams*, 507 U.S. 680, 693–94 (1993); *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). Consequently, a confession is involuntary—and not admissible—if, due to state action, a defendant's "will has been overborne and his capacity for self-determination critically impaired." *Schneckloth*, 412 U.S. at 225.

The record shows that on April 19, 2012, Castillo-Rubio was interviewed by FBI and DEA special agents while he was in the custody of Mexican authorities in Mexico City. Report of Investigation, ECF No. 402-4 at 1. However, "[i]t should be noted that ... [DEA Special Agent Juan] Briano read CASTILLO-Rubio his rights and CASTILLO-Rubio acknowledged he understood and wanted to continue on with the interview." *Id.* at 2. Moreover, "Castillo-Rubio stated he would have no problem providing actionable intelligence against members of the [drug trafficking organization]." *Id.* at 4. And "[a]t the end of the interview, Castillo-Rubio emphasized that he felt more comfortable working with DEA in the near future and did not want to see new faces at every interview." *Id.*

After examining the totality of the circumstances, the court finds that Castillo-Rubio voluntarily made his statements to the special agents while in custody only after he received his *Miranda* warnings. Accordingly, the Court further finds that any challenge to his statements by his counsel would have been unsuccessful. Thus, it finds that Castillo-Rubio has not met his burden to show that his attorney's decision to forego a suppression motion "was unreasonable under

14

prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

As for the failure to secure witnesses, Castillo-Rubio provides insufficient information to support his claim. "[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citing *Bray v. Quarterman*, 265 F. App'x 296, 298 (5th Cir. 2008)). "Thus, to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available and would testify, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Id.*

Castillo-Rubio has not identified any witnesses by name, demonstrated they were available and willing to testify, or provided a summary of their anticipated testimony. As a result, he once again cannot meet his burden of establishing his counsel's performance prejudiced his cause.

In sum, Castillo-Rubio fails to identify *with specificity* any fact, document, witness, or event, which could have been the subject of an investigation and would have altered the outcome of his trial. Unless he specifically explains what, in his view, counsel should have investigated, he cannot show that his counsel was ineffective for not conducting further investigation. *See Hughes v. Vannoy*, 7 F.4th 380, 390 (5th Cir. 2021); *Bower v. Quarterman*, 497 F.3d 459, 470 (5th Cir. 2007).

### (5) Failure to Consult about Possible Defenses

"From counsel's function as assistant to the defendant derive the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Strickland*, 466 U.S. at 688. Still, "an attorney's strategic choices, usually based on information supplied by the defendant and gathered from a thorough investigation of the relevant law and facts, 'are virtually unchallengeable.'" *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994) (quoting *Strickland*, 466 U.S. at 691). And "the reasonableness of an attorney's investigation may critically depend on the information forwarded by the defendant and the defendant's own strategic decisions about his representation." *Id.* (citing *Strickland*, 466 U.S. at 691) ("when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable").

Castillo-Rubio "always maintained his innocence." Mem. in Supp., ECF No. 401 at 13. He claimed he was not the person in the indictment and could not assist in his defense. Aff. of Randolph Ortega, ECF No. 402-3 at 2. Moreover, when he was advised of possible defenses, his response was simply, "it's not me." *Id.* "Thus, the only defense available was to cross examine witnesses, challenge evidence and attempt to forward [the] theory of mistaken identity." *Id.* So, Castillo-Rubio's counsel executed his trial strategy and cross examined the cooperating witnesses, challenged the admission of evidence, and cast suspicion on the veracity of the Government witnesses. Tr., ECF No. 339 at 18–38. Under these circumstances, Castillo-Rubio cannot show his counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *Lincks*, 82 F.4th at 330–31.

(6) Failure to Review Information

Castillo-Rubio claims his "[c]ounsel failed to review information and documentation provided by [him]." Mot. to Vacate, ECF No. 397 at 5. His counsel counters he "reviewed the discovery and supporting documents [and Castillo-Rubio] indicated he could not assist as he knew nothing, and he was wrongly accused." Aff. of Randolph Ortega, ECF No. 402-3 at 2.

Castillo-Rubio provides no facts or evidence beyond his conclusory statement to support his claim. "Although *pro se* habeas petitions must be construed liberally, 'mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.'" *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (quoting *United States v. Woods*, 870 F.2d 285, 288 n.2 (5th Cir. 1989).

(7) Failure to Present a Defense

Castillo-Rubio claims that his "[c]ounsel failed to present a defense." Mot. to Vacate, ECF No. 397 at 5. His counsel responds he "presented the only defense Mr. Castillo endorsed, that he was not the person accused in the indictment." Aff. of Randolph Ortega, ECF No. 402-3 at 2.

There is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Romero v. Lynaugh*, 884 F.2d 871, 879 (5th Cir. 1989) (internal quotation and citation omitted). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Martinez v. Dretke*, 404 F.3d 878, 885 (5th Cir.2005) (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)).

The record does not support Castillo-Rubio's claim. "At trial, Castillo-Rubio's defense was that he was not El Pariente. [Defense counsel] argued that the seven witnesses identifying him as

17

El Pariente were lying in exchange for money, reduced sentences, and immigration benefits for their families." *Castillo-Rubio*, 34 F.4th at 408. Moreover, in line with Castillo-Rubio's identity defense, his counsel attacked the veracity of the witnesses, the agents, and the cooperators. Trial Tr., ECF No. 339 at 18–38. He argued in closing that the Government failed to meet its burden to establish Castillo-Rubio's guilt beyond a reasonable doubt. *Id.* "This is a viable strategy, as it 'sometimes is better to try to cast pervasive suspicion of doubt than to strive to prove a certainty that exonerates.'" *United States v. Bernard*, 762, F.3d 467, 478 (5th Cir. 2014). His counsel continued to assert Castillo-Rubio's position that he was not the person accused in the indictment during sentencing and argued that Castillo-Rubio was "not the individual known as 'El Pariente.'" Sentencing Mem., ECF No. 302 at 2.

It is clear from Castillo-Rubio's memorandum in support of his § 2255 motion that he "has always maintained his innocence." Mem. in Supp., ECF No. 401 at 13. This comports with his attorney's characterization of Castillo-Rubio's insisted defense strategy. Aff. of Randolph Ortega, ECF No. 402-3 at 2. By espousing the "it wasn't me defense," his counsel gave Castillo-Rubio the defense he wanted.

### (8) Failure to Challenge the Anonymous Jury

The Government filed a motion for an anonymous jury to "be conducive to creating a safe atmosphere to deliberate for the jury, in light of the disturbing evidence at trial [and] to minimize any potential prejudice and ensure that an impartial jury is selected, which will guarantee the Defendant's presumption of innocence throughout the trial." Mot., ECF No. 193 at 6. Castillo-Rubio's counsel objected and argued "[t]he facts of this case do not weigh in favor of an anonymous jury" in his response. Resp., ECF No. 200 at 8. The Court entered an order denying in

18

part and granting in part the Government's motion. Order, ECF No. 209 at 9. The Court then held a hearing addressing the Government's motion. Mot. Hearing Tr., ECF No. 338. The Court directed the disclosure of panel member names to the prosecution and defense before jury selection—but ordered the jurors to be referred to by their juror number throughout the trial. The Court also ordered both parties to turn over information concerning the jurors immediately after jury selection. The Fifth Circuit reviewed the empaneling of the anonymous jury and held that "the district court's anonymity procedures balanced the protection of the jury with Castillo-Rubio's rights." *Castillo-Rubio*, 34 F.4th at 409.

"It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions." *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) (citing *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980)). Defendants who collaterally attack their federal convictions may not raise grounds previously raised and resolved on direct appeal. *United States v. Rocha*, 109 F.3d 225, 229-30 (5th Cir. 1997).

### C. Ineffective Assistance of Counsel during the Sentencing Phase

Movant makes three "sentencing phase" claims of ineffective assistance alleging that defense counsel failed to (9) prepare him for the presentence interview; (10) file any objections to the presentence report; (11) offer mitigation evidence at his sentencing. Mot to Vacate, ECF No. 397 at 7.

#### (9) Failure to Prepare for Pre-Sentence Interview

Castillo-Rubio was advised by his counsel not to discuss the offense conduct during his presentence interview. Presentence Report, ECF No. 310 at ¶ 78. This strategic decision was a continuation and ratification of the "actual innocence" defense Castillo-Rubio employed at trial

19

and it preserved his appellate rights. Castillo-Rubio did provide biographical information, as well as information about his physical condition, substance abuse, education, employment and his financial status. This information will presumably assist Castillo-Rubio during his incarceration.

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. The strategy attributed to Castillo-Rubio's counsel is plausible: by not discussing his offense conduct Castillo-Rubio preserved his actually innocent claim for his appeal. Castillo-Rubio cannot now disclaim his attorney's advice just because he does not like the results, or because he believes his counsel made a mistake. *See Druery v. Thaler*, 647 F.3d 535, 540 (5th Cir. 2011) ("That [counsel] may have been mistaken in part of his legal reasoning does not constitute ineffectiveness where the ultimate strategic choice was reasonable." (emphasis added)).

           (10)    Failure to Make Sentencing Objections

Castillo-Rubio's counsel did not submit written objections to the presentence report within the time period allowed by Federal Rule of Criminal Procedure 32(f)(1). Addendum, ECF No. 309 at 4. He did, however, submit a sentencing memorandum and asked the Court to exercise its discretion to impose a non-guideline sentence of 240 months' imprisonment. Sentencing Mem., ECF No. 302 at 14. He also filed supporting letters from Castillo-Rubio's family and friends. Letters, ECF No. 301. He then made nine objections at Castillo-Rubio's sentencing hearing. Sentencing Tr., ECF No. 340 at 3–5. But his objections were overruled by the Court. *Id.* at 5.

Castillo-Rubio now specifically challenges the appropriateness of the two-level enhancement under Sentencing Guideline § 2D1.1(b)(11) for bribing, or attempting to bribe a law enforcement officer to facilitate the commission of the offense. Mem. in Supp., ECF No. 401 at

18–19. He claims the Government has admitted that the bribes were made to impede the investigation—not to facilitate the commission of an offense. *Id.* at 19.

The evidence at trial as well as the findings in the presentence report clearly justify the application of the bribery adjustment to Castillo Rubio's sentence. The evidence showed Castillo Rubio admitted to the FBI and DEA special agents while he was held in Mexico City "that he would personally pay Julio Porras-Chavez $50.000 dollars every month [and] Porras-Chavez would then pay law enforcement agencies within the state of Chihuahua." Report of Investigation, ECF No. 402-4 at 3.

> Additionally, according to sources, Castillo-Rubio also bribed law enforcement during his involvement with the Juarez Cartel. Although it is believed that Castillo-Rubio had enough influence to get his way with police, it was because Castillo-Rubio would usually meet with law enforcement officers on a monthly basis and provide envelopes marked with all the officers' names with cash payments with amounts depending on their rank. As such, an adjustment for bribing or attempting to bribe a law enforcement officer to facilitate the commission of the offense, pursuant to USSG § 2D1.1(b)(11), is warranted.

Presentence Report, ECF No. 310 at ¶ 76). Furthermore, "Castillo-Rubio acted as a point of contact between corrupt Mexican law enforcement officials and paid cash to enforcement officials in Mexico to maintain trafficking activities." *Id.* ¶ 86. Hence, his bribes did "facilitate the offenses." Sentencing Tr., ECF No. 340 at 8. Finally, Castillo-Rubio's claim "that the guidelines were improperly applied are not cognizable under § 2255." *United States v. Payne*, 99 F.3d 1273, 1281 (5th Cir. 1996). Castillo-Rubio is not entitled to relief on this claim.

(11)    Failure to Offer Mitigating Evidence

The Sentencing Memorandum as well as the arguments made by Castillo-Rubio's counsel pointed out "mitigating" circumstances to justify a sentence of 240 months. Sentencing Mem., ECF No. 302. It provides certain biographical and background information as a baseline to

establish Castillo-Rubio's inability to withstand a long term of imprisonment. It maintains Castillo-Rubio's actual innocent defense and argues that he was forced to work as a "bookkeeper" by Rodolfo Carrillo-Fuentes because of his accounting background. *Id.* at 3. It then discusses the sentencing factors under 18 U.S.C. § 3553, describing them as a "better touchstone[ ] for sentencing." *Id.* at 10. It raises the risk of disparate sentencing with an emphasis of the offense conduct of the witnesses in comparison with Castillo-Rubio's conduct in "context of the overall conspiracy[.]" *Id.* at 11. Finally, it points out Castillo-Rubio's lack of disciplinary problems while in custody and lack of a criminal history. *Id.* at 11.

During the sentencing hearing, Castillo-Rubio's counsel raised nine objections to the presentence investigation, including the designation of Castillo-Rubio as a "high ranking member of the Juarez Cartel, collecting drug proceeds, serving as a clearing house, multiple drug seizures, and the guideline calculation." Sentencing Tr., ECF No. 340 at 3 and 4).

During the sentencing colloquy, Castillo-Rubio's counsel asked for a variance based on the fact that imposition of a 240-month sentence would, in effect, be a life sentence. *Id.* at 12. He emphasized the goals and purposes of the sentencing factors under Title 18 U.S.C. § 3553(a). His application of the facts and circumstances to each of the factors was an appeal for the Court to consider a below the guideline range of "not more than 240 months." *Id.* at 4, 10, 11, 12, 13, 14.

**D.      Other Aggregated Claims from the Supporting Memorandum**

Castillo-Rubio offers other theories in his memorandum in support of his § 2255 motion that his counsel's failure to investigate prevented him from making proper objections and articulating a response to leading questions. Mem. in Supp., ECF No. 401 at 15. However, on appeal, the Fifth Circuit determined that Castillo-Rubio failed to show that additional questioning

22

would have "'cast serious doubt on the jury's guilty verdict.'" *Castillo-Rubio*, 34 F.4th at 410 (quoting *United States v. Delgado*, 672 F.3d 320, 338 (5th Cir. 2012) (internal quotation marks and citation omitted)).

Castillo-Rubio also claims that "[r]easonable counsel would have investigated the cooperating witness [to reveal what was promised] in exchange for their testimony." Mem. in Supp., ECF No. 401 at 16. But his counsel was thoroughly prepared and executed a trial strategy which included cross examining the cooperating witnesses, challenging the admission of evidence, and casting suspicion on the veracity of the Government witnesses. Tr., ECF No. 339 at 18–38.

Castillo-Rubio makes other arguments that he received ineffective assistance when his lawyer stipulated to the lab analysis of the drugs seized and failed to call a witness to confirm that he was not a member of the Juarez Cartel. Mem. in Supp., ECF No. 401 at 16. "Trial management is the lawyer's province: Counsel provides his or her assistance by making decisions such as 'what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence.'" *McCoy v. Louisiana*, 584 U.S. 414, 422 (2018) (quoting *Gonzalez v. United States*, 553 U.S. 242, 248 (2008) (internal quotation marks and citations omitted)). The stipulation of the scientific analysis of the drugs seized was a trial management decision withing the province of defense counsel to make. Moreover, Castillo-Rubio's counsel specifically addressed the stipulation during closing, saying "We stipulated to all of the loads you saw. Why? Because they in no way related to my client … through a conspiracy, or through any other way." Trial Tr., ECF No. 339 at 22. Calling witnesses who claimed Castillo-Rubio was not known to them to be a member of the Juarez Cartel would have added little or nothing to his

defense. The choices made by Castillo-Rubio limited his defenses because he insisted he was not the person listed in the indictment and knew nothing about the offenses alleged in the indictment.

Castillo-Rubio has failed meet his burden of showing that his counsel's performance was deficient, and that the purported deficient performance prejudiced the defense on these claims. *Strickland*, 466 U.S. at 689–94.

## EVIDENTIARY HEARING

A motion brought under § 2255 may be denied without a hearing if "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992). The record in this case is adequate to dispose fully and fairly of Castillo-Rubio's claims. The Court need inquire no further on collateral review and an evidentiary hearing is not necessary.

## CERTIFICATE OF APPEALABILITY

A movant may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). He may not receive a certificate of appealability unless he "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). He "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" when district court rejects his constitutional claims on the merits. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* to a certificate of appealability determination in the context of § 2255 proceedings). He must show both that "jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was

correct in its procedural ruling" when district court rejects his claims solely on procedural grounds. *Slack*, 529 U.S. at 484.

Reasonable jurists could not debate the Court's reasoning for denying Castillo-Rubio's claims on substantive or procedural grounds—or find that his issues deserve encouragement to proceed. *Miller El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).

The Court will not issue a certificate of appealability.

### CONCLUSIONS AND ORDERS

The Court concludes that Castillo-Rubio has failed meet his burden of showing (1) his counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 689–94. The Court further concludes Castillo-Rubio has failed to assert claims establishing (1) his "sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack." *Seyfert*, 67 F.3d at 546. The Court also concludes that Castillo-Rubio is not entitled to a hearing or a certificate of appealability. Accordingly, the Court enters the following orders:

**IT IS ORDERED** that Luis Guillermo Castillo-Rubio's *pro se* "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (Doc. 397) is **DENIED,** and his civil cause is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Luis Guillermo Castillo-Rubio is **DENIED** an evidentiary hearing.

**IT IS FURTHER ORDERED** that Luis Guillermo Castillo-Rubio is **DENIED** a **CERTIFICATE OF APPEALABILITY**.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED AS MOOT**.

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

**IT IS SO ORDERED.**

**SIGNED** this ___29^th___ day of April 2024.

_____
**DAVID BRIONES**
**SENIOR UNITED STATES DISTRICT JUDGE**